UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL QUEEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-871 (BAH) |
| ) | Judge Beryl A. Howell |
| ED SCHULTZ, ) | |
| ) | |
| Defendant, ) | |
| ) | |

**PLAINTIFF MICHAEL QUEEN'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION TO DISQUALIFY JEFFREY LANDA, ESQUIRE**

**Mr. Landa's Inappropriate Letter
Is the Basis for Disqualification**

When Mr. Landa was admitted to practice in this court *pro hac vice* it was anticipated that he would conduct himself in accordance with the ethical standards that apply to lawyers who are admitted to the bar in this jurisdiction. On September 7, 2011, Mr. Landa sent a letter via email to Mr. Lane, one of the attorneys for the plaintiff in this case. [Exhibit A] In that letter Mr. Landa threatened to "report" to authorities in three states and the District of Columbia "illegal activity" by Mr. Queen, the plaintiff. Mr. Landa discussed in some detail the penalties, including confinement to prison, if Mr. Queen was convicted. Mr. Landa stated that he was acting in response to a civil case. He stated that he wanted Mr. Lane's "comments as how these issues can be resolved but it is essential we agree upon a solution within the next 24 hours."

Mr. Lane concluded that he could not ethically respond to the inappropriate demand in which it appeared that Mr. Landa suggested that the civil case should settled

under the threat of criminal prosecution. On September 14, 2011, Mr. Lane wrote to Mr. Hayes, the first attorney to enter his appearance in this case, and a member of the bar of this court. [Exhibit B] Since a date for the deposition of Mr. Queen had been set for September 27, 2011, Mr. Lane stated that if Mr. Landa was planning to conduct that deposition before the court ruled upon the pending motion to disqualify him, the plaintiff would seek an order from the court precluding him from doing so but that if an attorney at Nixon Peabody was planning to conduct the deposition no such order would be sought. While Mr. Hayes did not respond to that letter he apparently contacted Mr. Landa (Mr. Lane had not sent a copy to Mr. Landa). Mr. Landa then wrote to Mr. Lane canceling the planned depositions.

The plaintiff requests that in view of Mr. Landa's conduct, his admission in this case should be revoked and that he should be precluded from any further activity in this case. The letter by Mr. Landa was sent to Mr. Lane after the motion to disqualify Mr. Landa had been filed and, therefore, was not cited in that motion.

The "illegal activity" referred to by Mr. Landa was based upon Mr. Landa's interpretation that laws about "employment agencies" required Mr. Queen to file documents, a conclusion which the plaintiff does not share.

## Mr. Landa's Refusal to Make a Factual Response is Troubling

When confronted by tape recorded radio broadcasts in which both Mr. Landa and Mr. Schultz participated together and in which Mr. Landa made statements about disputed issues in this case from, he implied, his own knowledge, Mr. Landa refused in his opposition pleading to either admit that he had made those statements or deny that he had done so. Throughout his pleading, Mr. Landa asserted that the transcripts of his own

voice on the tapes "was prepared by some unknown person" (Defendant's Memorandum in Opposition, hereinafter "Opp.," p. 2) or "an unauthenticated transcript of a radio interview with Ed Schultz and Jeffery Landa that was likely prepared by the Plaintiff." (Opp. p. 4) Mr. Landa knows that the transcripts accurately set forth his own words as he has access to the recording. His response is inappropriately evasive regarding events in which he participated since both respect for the court and the rights of the plaintiff required a forthright response.

Regarding statements reportedly made by Mr. Landa from his own knowledge, which were published in the print media, Mr. Landa's response was similar. He did not deny that he made the remarks stating that the printed remarks were "unauthenticated" (Opp., p. 2), "an unauthenticated photocopy" (Opp., p. 3), "an unauthenticated photocopy" (Opp., p. 4), "hearsay" (Opp., p. 4), "an unauthenticated copy (p. 4), "an unauthenticated copy" and "hearsay" (Opp., p. 5), "inadmissible hearsay." (Opp., p. 5)

Mr. Landa said that there was "no evidence" that he was being considered as a partner in the deal with Michael Queen and Ed Schultz. It is the recollection of counsel that Mr. Landa made a statement to the court via telephone affirming that possibility. This matter too is dealt with by Mr. Landa evasively. While it appears from Exhibit A in the Motion to Disqualify that Mr. Schultz had talked with Mr. Queen about bringing Mr. Landa in as a partner, Mr. Landa's response is that "there is no evidence" Landa was aware of the communication.

---

### Mr. Landa is a Necessary Witness Regarding The Alleged Termination of the Agreement Between Mr. Schultz and Mr. Queen

A central issue in this case is why the relationship between Mr. Queen and Mr. Schultz was terminated. The plaintiff contends that Mr. Schultz violated the agreement they had entered into by making a separate deal with MSNBC after having stated that "I will not do a TV deal without your involvement and that includes a financial involvement. Rest assured we are together on this." (Complaint, paragraph 29, Letter to Mr. Queen sent by Mr. Schultz on April 5, 2008)

Mr. Schultz asserts in response that "communications with Queen stopped because of Queen's bizarre conduct, threatened litigation and because he was stalking Schultz and Schultz' wife." (Answer, p. 13) Mr. Schultz also stated that his attorney, Mr. Landa, emailed Mr. Queen saying that "Schultz had been advised not to communicate with Queen." (Answer, p. 13) In his answer, Schultz stated that his attorney sent another letter to Mr. Queen "advising him to stop further attempts to contact Ed or Wendy Schultz" and stated "that such acts violated New York stalking statutes." (Answer, p. 13) Schultz stated that subsequently Landa "emailed Queen to cease and desist his 'continual unwanted contacts [falling] under the purview of the stalking statutes.'" (Answer, p. 14)

Mr. Queen asserts that he never stalked Mr. Schultz or Mrs. Schultz and that the last time he spoke with Mr. Schultz was in response to an invitation by Mr. Schultz to attend a meeting with him at NBC.

Subsequent to the filing of the Complaint, Mr. Landa stated, apparently from his own knowledge, that Mr. Queen had stalked Mr. Schultz and had followed him around at events where he appeared. Those statements are blatantly false and defamatory.

However, they have not been set forth in the Motion to Disqualify Mr. Landa because they are defamatory, but because they support the position that Mr. Landa has held himself out to be a person who has first hand information about a central issue in this case. That question being why the contract was abrogated by Mr. Landa and Mr. Schultz. The assertions by Mr. Schultz in his Answer that Mr. Landa sent communications to Mr. Queen may be hearsay. Certainly the essential witness is Mr. Landa, whose actions in terminating the relationship between Mr. Queen and Mr. Schultz demonstrate that he is a necessary witness, and perhaps the only witness, for the defendant regarding the series of false charges made by Mr. Schultz in his Answer.

Mr. Landa responds to this body of evidence by stating "Plaintiffs (sic) acknowledge that there is no reference in the Complaint, Answer to the Complaint or the Counterclaims regarding allegations that Queen stalked Ed and Wendy Schultz." (Opp., footnote p. 3) Mr. Landa cites as proof "Moving Papers [pg-8 paragraph 1]. First of all, there is only one Plaintiff in this case. Secondly, the assertions cited by Mr. Landa do not appear on page 8 of the Motion to Disqualify him. And most important of all, as we have seen, Mr. Schultz, in the Answer to the Complaint, made several references to the allegations of stalking.

Plaintiff did point out that the additional comments by Mr. Schultz and Mr. Landa that Mr. Queen had followed Mr. Schultz around to events where he stalked him were new and not set forth in the pleadings. (Motion to Disqualify, p. 10) However, as we have seen, Mr. Schultz and Mr. Landa did refer to alleged stalking by Mr. Queen which allegedly led to the end of the relationship.

### Mr. Landa's Assertion That There Is No
### Defamation Cause of Action in the Case is Not Relevant

Throughout the Opposition, Mr. Landa asserts that since there is no cause of action in the Complaint for defamation, all references to defamation are irrelevant. For example, Mr. Landa suggests that Exhibit D to the Motion to Disqualify is offered to establish that "Mr. Schultz asserted that Mr. Queen had 'stalked,' 'intimidated' and 'harassed' Mr. Schultz and his wife. It is irrelevant as it pertains to defamation which is not an issue in the underlying litigation." While the remarks by Mr. Landa are defamatory, they are offered here not to demonstrate that they are defamatory, but to demonstrate that Mr. Landa is a fact witness to sharply disputed allegations. Mr. Landa asserted that a document that was offered in which Mr. Landa and Mr. Schultz stated that they had only seen the press release and never seen the Complaint was "inadmissible and irrelevant." The statements by Mr. Landa and Mr. Schultz were untrue and the document was offered regarding the credibility of the two witnesses. (Opp., p. 4)

The statement that a news report quoting Mr. Landa as saying "Queen initially represented himself as Michael Anderson so as not to run into problems at NBC" is inaccurate and defamatory since it implies that Mr. Queen was engaged in fraud. However, it is being offered not to demonstrate that, but to demonstrate that Mr. Landa spoke about crucial events that are contested and about which he holds himself out to be a witness. Mr. Landa replies that the document is "inadmissible hearsay and pertains to defamation." (Opp., p. 4) Similar or identical language is used by Mr. Landa regarding Exhibit K (Opp., p. 4), Exhibit L (Opp., p. 5) and another allegation on page 5. In each instance, the argument is made by the plaintiff that Mr. Landa has presented himself as a fact witness to matters which are contested in this case.

### Mr. Landa's Assertions that He Was Trapped
### By Mr. Lane Are Not True

Mr. Landa asserts that Mr. Lane trapped him by asking him questions related to "alleged defamation." (Opp., p. 3) As Mr. Landa has asserted several times, defamation is not a cause of action in this Complaint. The most inappropriate letter sent by Mr. Landa (Exhibit A) was not solicited. That correspondence was initiated by Mr. Landa on September 7, 2011, and Mr. Landa began that letter by stating it was a letter sent as "a professional courtesy." In essence, the letter warned that Mr. Queen would be prosecuted for illegal activity unless he settled a civil case.

Almost all of Mr. Landa's activities that make him a necessary witness took place for several years before counsel for the Plaintiff had even met Mr. Queen or heard of any efforts by Mr. Queen to arrange for a television program for Mr. Schultz. Counsel for the Plaintiff did not trap Mr. Landa. Mr. Landa voluntarily engaged himself as an active participant in every situation that is a contested issue in this case, thereby making himself a necessary witness. His recent letter suggesting that a civil case should be settled under the threat of criminal prosecution standing alone is evidence that he should be disqualified. However, that letter does not stand alone and it was created after Mr. Landa had created a record of active participation in every contested issue in this case.

### ARGUMENT

**I.    Mr. Landa's Inappropriate Letter is the Basis for Disqualification.**

The District Court bears responsibility for supervising the members of its bar and its exercise of this supervisory duty is discretionary. *Groper v. Taff,* 717 F.2d 1415, 1418 (D.C.Cir.1983). Courts must also recognize of course that disqualification motions may

7

be used as 'procedural weapons' to advance purely tactical purposes. *In re American Airlines, Inc.*, 972 F.2d 605, 610, 611 (5th Cir.1992).

The federal court has held that,

> Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.

*Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir.1994) (citing *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir.1992) *cert. denied sub nom. Northwest Airlines, Inc. v. American Airlines*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

Unethical conduct must also threaten to impact the outcome of the trial. *Paul v. Judicial Watch, Inc.*, 571 F.Supp 2d 17 (D.D.C. 2008). In the instant case, Mr. Landa's letter requesting a response to unethical and unlawful demands will ultimately affect the outcome of the trial because those issues will not be resolved without the court ruling on the validity or invalidity of Mr. Landa's conduct.

**II.   Jeffrey B. Landa Should Not Be Permitted To Depose Plaintiff Michael Queen or Any Other Witness because of the Impermissible Statements made to Plaintiff's Counsel.**

Mr. Landa has violated local ethics rules and should not be permitted to act as legal counsel in this matter. The District of Columbia Rules of Professional Conduct provides in pertinent part that,

**Rule 8.4 – Misconduct**

It is professional misconduct for a lawyer to:

(g) Seek or threaten to seek criminal charges or disciplinary charges solely to obtain an advantage in a civil matter.

8

When Mr. Landa wrote an e-mail to Mr. Lane and advised Plaintiff's counsel that Michael Queen, Ms. O'Connell and Mr. Schindler had violated numerous state laws which carried criminal penalties, and necessitated that he [Landa] go forward and report these matter to the appropriate authorities, the e-mail was intended to intimate the Plaintiff Queen, O'Connell and Schindler. Mr. Landa was attempting to gain an unfair advantage in this civil matter because he indicated in the e-mail that "[w]e are interested in your comments as how all of these issues can be resolved but it is essential we agree on a resolution within the next 24 hours." This was clearly an attempt to frighten Plaintiff and the others into believing that they would be reported to authorities by Defendant's counsel for alleged past "criminal" conduct related to the underlying litigation. Under local ethics rules this is not permissible.

Under NY DR 7-105, "it is improper to use the threat of criminal prosecution as means of extracting money in a civil suit. *People v. Harper,* 75 N.Y. 2d 313, 552 N.Y.S. 2d 900 (1990). NY DR 7-105(A) provides in pertinent that,

> A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.

And in *In re Gelman,* 230 A.D. 524, 245 N.Y.S. 416 (1st Dept. 1930), an attorney for plaintiffs in a personal injury case resulting from a collision between plaintiff's car and defendant's taxicab wrote to the defendant, if I am put to the trouble of proceeding against you personally, I will be compelled to institute criminal proceedings against you for failing to cover your taxicab by proper insurance. The attorney was severely censured.

Mr. Landa threatened to report Plaintiff Queen's alleged misconduct to the State of New York, as well as to the city of New York, among other jurisdictions. This action is prohibited under the ethics rules. Therefore, Plaintiff Queen respectfully moves the Court to prohibit Attorney Landa from engaging in the discovery examination of the Plaintiff or any other witness in this case.

Respectfully submitted

_____/s/_____
MARK LANE
Member of the Bar of the District of Columbia
#445988
The Lane Law Firm
4 Old Farm Road
Charlottesville, VA 22903
Office: [434] 293-2349
Facsimile: [434] 293-9013
Email: mlane777@cs.com

_____/s/_____
FRAZER WALTON, JR.
Member of the Bar of the District of Columbia
#374301
920 Burns Street, S.E.
Washington, DC 20019
Office: [202]584-7572
Email: frawalton@verizon.net

Attorneys for Plaintiff

Dated: September 19, 2011

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2011, I copy of the foregoing Plaintiff Queen's Reply to Defendant's Opposition to Plaintiff's Motion to Disqualify Jeffrey Landa was sent by electronic mail to John C. Hayes, Jr., at the offices of Nixon Peabody, LLP, 401 Ninth Street, N.W., Suite 900, Washington, D.C. 2004.

_____/s/_____
Frazer Walton, Jr.

# EXHIBIT A

Dear Mark,

Please consider this letter a professional courtesy re your client's conduct as you've alleged in the underlying complaint and as established in the documents you've produced. There is no doubt that Mr. Anderson/Queen along with Ms. O'Connell and Mr. Schindler have violated numerous laws in the state of New York, the city of New York, California, Maryland and the District of Columbia. For the sake of brevity, I've only outlined the criminal penalties associated with their violations in D.C. and New York which, according to your complaint, are where most of their illegal activity took place.

In New York, Anderson/Queen et al., by acting as alleged in the underlying complaint, has violated all of the laws related to New York talent agents and upon conviction is guilty of a misdemeanor subject to a fine not to exceed one thousand dollars, or imprisonment for not more than one year, or both, by any court of competent jurisdiction. We believe this potential penalty is per violation, e.g., each of Anderson/Queen's communications with Fox, NBC, MSNBC, Access 1, Air America (NY-related activities) detailed in the underlying complaint.

In the District of Columbia, Anderson/Queen et al., by acting as alleged in the underlying complaint, has violated all of the laws related to D. C. talent agents and upon conviction is subject to fines not to exceed $1,000 per day for each day the violation occurs, or to imprisonment not to exceed 1 year, or both. Again, we believe this potential penalty is per violation, e.g., each of Anderson/Queen's communications with NBC, Russert, MSNBC, WUSA, Horlick, Air America (D.C.-related activities).

There are, of course, very stringent laws in California applicable to Anderson/Queen et al.'s alleged contacts with NBC as alleged in the complaint. And, of course, Maryland also has related laws.

http://mail.verizon.com/webmail/public/print.jsp?wid=vz_widget_MailOpen_2&type=mail...   9/19/2011

We were in process of evaluating our options and/or obligations re the previous but believe that your threats pertaining to alleged statements erroneously attributed to me regarding Anderson/Queen's "criminal" conduct necessitates we go forward and report these matters to the appropriate authorities in city of New York, state of New York, District of Columbia, California and Maryland.

As you certainly should know, applicable statutes, require contracts such as that you are suing on to be in writing and must be filed (and approved) along with a schedule of fees (that must be filed and approved) by each jurisdiction Anderson/Queen et al. alleges to have worked on behalf of Ed Schultz. In other words, there is no such thing as an oral contract as you allege. You can certainly check the respective laws to see that Anderson/Queen et al. must also be bonded and meet numerous other requirements designated by each jurisdiction. There are also strict limitations on fees which must be approved in advance by appropriate authorities; and, the remedies you are asking for exceeds such limitations.

In other words, Anderson/Queen et al. have conducted themselves as unlicensed agents and by statute, public policy and case law in every relevant jurisdiction, Anderson/Queen et al. cannot benefit from even a written contract, let alone e-mails and disputed conversations.

We assume your client will advise Ms. McConnell and Mr. Schindler of these issues. We are interested in your comments as how all of these issues can be resolved but it is essential we agree on a solution within the next 24 hours.

Sincerely, Jeff

--
_____

Please consider the environment before printing this email.

Email is covered by the Electronics Privacy Act, 18 U.S.C. §§2510-2521, and is legally privileged. This message contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine and is intended solely for the use of the addressee named above. If you are neither the intended recipient nor the employee or agent responsible for delivering this electronic message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or the use of the content of this electronic message is strictly prohibited. If you have received this electronic message in error, please immediately notify us by replying to this message and deleting the original message.

# EXHIBIT B

**verizon**
**Verizon Message Center**

Wednesday, Sep 14 at 8:32 AM

| | |
|---|---|
| From: | MLane777@cs.com |
| To: | jhayes@nixonpeabody.com |
| Cc: | frawalton@verizon.net |
| Subject: | Re: Mr. Landa's Letter, September 7, 2011 |

Mr. Hayes:

    I presume that you are aware of the fact that the Request for Admission that you signed with Mr. Landa and served upon counsel for Mr. Queen followed by one day the letter that Mr. Landa sent to me on September 7, 2011. In the event that your co-counsel did not inform you that he had written to me, I am sending his letter to you via facsimile. Mr. Landa's suggestion that I settle or withdraw the civil case of *Queen v. Schultz* under his threat of criminal prosecution of the plaintiff was inappropriate and I could not ethically respond to that suggestion. Mr. Landa's letter provides the context for the Request for Admissions that you signed and served. Both Mr. Landa's letter and my response will be presented to the court. Do I have your consent to represent to the court that you were not aware of Mr. Landa's letter when you signed and served the Request for Admissions, or, if that is not accurate, that you were aware of Mr. Landa's letter when you signed the Request for Admissions? I will comply with your response that I make either representation or none. I will invite the court's attention to this serious matter.

    If you or another member of your firm is going to conduct the deposition of Mr. Queen scheduled for September 27, 2011, and if Mr. and Mrs. Schultz will appear in Washington, DC to be deposed the following two days as their counsel promised in writing, the Queen deposition should proceed. If Mr. Landa is planning to conduct the Queen deposition we will be constrained to seek an order from the court precluding him from doing so until after the court rules upon the pending motion to disqualify him. Our motion will be based upon the facts set forth in the pending motion, the rules that govern our profession, the case law and the potential impact upon this case by Mr. Landa's letter to me dated September 7, 2011.

    If the dates for the depositions of Mr. and Mrs. Schultz are not convenient for you to defend your clients at the depositions please notify me of dates that would be convenient.

    I request a response by email as time is now short.

Very truly your,

Mark Lane

**Mark Lane**
4 Old Farm Road
Charlottesville, VA  22903
Phone: 434-293-2349
Fax: 434-293-9013