**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL QUEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:11cv00871 (BAH) |
| v. | ) | |
| ED SCHULTZ, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
<u>SANCTIONS AND AN AWARD OF ATTORNEY'S FEES</u>**

Plaintiff respectfully submits this Opposition to Defendant's Motion for Sanctions for the reasons set forth herein. Defendant has made serious factual misrepresentations, which can only lead to the conclusion that he has filed this motion in bad faith, and with the purpose of misleading the Court and delaying trial. Plaintiff's Opposition will support his additional contention that Defendant's motion is frivolous and intended to harass the Plaintiff and Susan O'Connell Isen (O'Connell for purposes of this pleading), who is a non-party witness in this case.  Plaintiff respectfully requests that the Court invoke its inherent powers and impose appropriate sanctions against the Defendant, together with an award of attorney's fees to Plaintiff in connection with the defense of this unwarranted and improper motion.

A. **<u>INTRODUCTION</u>**

Defendant has now sought (and obtained) a second continuance of the trial of this case, in part by filing the instant motion falsely alleging plaintiff's "failure to comply with the rule with

1

respect to initial disclosures, Plaintiff's failure to produce highly relevant documents and the Plaintiff's deceptive and untruthful testimony." Defendant does not indicate whether he is filing his motion pursuant to Fed. R.Civ.P. Rule 11, 37, L.Cv.R. 26 or Paragraph 9 of the Court's Standing Order. Since Defendant's Motion states that it is not filed pursuant to Rule 37, Plaintiff will assume that defendant's motion is filed pursuant to Fed.R.Civ.P. Rule 11.

The record will show that Plaintiff has produced 1,183 bates stamped documents consisting of e-mails, letters, television show advertisements, and other documents.  Plaintiff's production to Defendant consisted of all the e-mails and documents received by or sent to Plaintiff by Susan O'Connell in Plaintiff's possession, amounting to more than 200 pages of the 1,183 produced. Further, Plaintiff filed initial disclosures in accordance with federal and local rules, and listed the names of more than a dozen witnesses with knowledge of this case. Plaintiff believed that some, and possibly all of these witnesses possessed documents that were not in Plaintiff's possession and could not be produced by him. Plaintiff's preservation and production efforts otherwise clearly complied with his discovery obligations.

Defendant's motion is meritless, and deliberately intended to harass and delay these proceedings. For the reasons set forth herein, Plaintiff requests that the Court deny Defendant's instant Motion, and respectfully further submits that the filing of that motion merits the imposition of sanctions, including an award of reasonable attorneys fees and costs, against Defendant pursuant to the Court's inherent powers.

## B.    FACTS

Susan O'Connell is a non-party to this action who, during the relevant time period, assisted Plaintiff in his partnership with Defendant Ed Schultz to put Mr. Schultz on television. Ms.

O'Connell was subpoenaed by the Defendant to give testimony concerning her work and knowledge of the venture. Defendant also required the production of documents related to the Queen and Ed Schultz partnership.

At her deposition, Ms. O'Connell testified in response to the request for documents that she turned over all the documents (including "e-mails, texts and brochures and all kinds of documents regarding getting Ed Schultz on television") to Plaintiff Queen in the summer of 2008. (Deposition of Susan O'Connell pp. 11:15-15:20, Exhibit "B" hereto) Ms. O'Connell further testified that she had no documents currently in her possession because they were in her old computer, that that computer died, and that she no longer had the old computer. (O'Connell Dep. pp. 16:15-15:2, Exhibit "B" hereto).

Defendant has made false and misleading statements to the Court and provides false representations regarding Ms. O'Connell's testimony.  Defendant alleges that, "Ms. O'Connell did not produce any documents in response to her subpoena because she systematically deleted possibly 1000 documents she described as 'everything to do with anything involving Ed Schultz.'" Def.'s Mot. for Sanctions, p.3,¶2.   Next, Defendant alleges that, "[O'Connell] candidly acknowledged engaging in the mass destruction of evidence."

Specifically, Defendant alleges that Ms. O'Connell testified that she sent possibly 1000 documents of 'everything to do with anything involving Ed Schultz' to Queen before deleting them from her computer.  Def.'s Mot. for Sanctions, p. 9,¶ 1.  Finally, Defendant falsely represents to the Court that, "Whether she was Queen's partner or his assistant, by her own admission, O'Connell is complicit with Queen in the destruction of up to 1000 documents pertaining to 'everything Schultz.'"  Def.'s Mot. for Sanctions, p. 9¶ 2.

An even cursory reading of Ms. O'Connell's deposition clearly shows that Ms. O'Connell never stated that she deleted or destroyed documents, and she never stated that she had 1000 documents.  Ms. O'Connell testified to the following when she was questioned by Jeffrey Landa about documents relating to Ed Schultz and the television project:

Q. Okay.  I think you testified yesterday that all of the documents that were responsive to the Subpoena Duces Tecum was given to Mr. Queen, correct?

A. Yes.

Q. Okay.  And did you create hard copies to give him?

A. No.

Q. Okay.

A. I don't know.

Q. Okay.  Do you recall approximately how many documents you gave him?

A. I don't recall the exact number.

Q. You don't need to know the exact number.  I just want to know, can you estimate how many?  Was it 1000?

A. I- I- don't know.[1]

Q. Okay.  Did you give him any hard copies of E-mails or documents that were responsive to the Subpoena?

A. No. I mean – no. No.

Q. Okay.  So you only gave him documents that were created on your computer and you e-mailed them to him?

A.   That – I believe so. yes.

(O'Connell Depo. pp. 17:7 – 18:8, Exhibit "B" hereto.)

---

[1] This excerpt appears to serve as the primary basis for Defendant's false and misleading assertion that possibly "1,000" documents were forwarded by Ms. O'Connell to Plaintiff. What Ms. O'Connell affirmatively testified is that she forwarded what documents she did have to Plaintiff. Plaintiff in turn produced those 137 documents to Defendant.

Defendant Schultz has proffered a false and misleading Rule 11 Sanctions motion. Plaintiff respectfully submits that these falsehoods (and underlying testimony fabrications) support the imposition of dispositive sanctions against the Defendant and the awarding of reasonable attorney's fees and costs to the Plaintiff in defense of this motion.  Equally significant, Defendant has made a false statement that amounts to character assassination of Ms. O'Connell, who is a non-party to this action.  Defendant's statement concerning Ms. O'Connell's alleged failure to produce, as well as her alleged subsequent deletion of 1000 documents, was also published in an e-mail by Defendant's counsel, who unequivocally stated as much in that e-mail. (See e-mail from John Hayes to Plaintiff's counsel dated September 25, 2014, "Hayes September 2014 e-mail," Exhibit "C" hereto).[2] Even a cursory review of Ms. O'Connell's testimony reveals that 1) she testified that she sent all of the documents in her possession to Plaintiff, and 2) she *did not* testify that she forwarded "1000" documents to Plaintiff, and 3) that she did not delete documents from her computer.[3]   To state that Ms. O'Connell's responses were otherwise constitutes an outright fabrication of her testimony and should not be condoned by the Court. Sanctions against the Defendant are therefore clearly warranted.

During the reopened discovery period, both parties obtained subpoenaed documents from NBC/Universal ("NBC") that had not been previously produced. Several of the NBC documents support Plaintiff's contention that he pitched material to NBC/MSNBC.  The documents also reveal that Plaintiff attempted to settle his grievances against the Defendant through the NBC administrative process.  The documents alleged to have been withheld by Plaintiff are irrelevant

---

[2] Defendant's counsel also sent an e-mail to Plaintiff's counsel wherein he asserted in part that the motion for sanctions is based upon Mr. Queen's failure to produce the "1000" or more documents that Susan O'Connell testified she sent to Mr. Queen and then deleted from her computer. . . .  (E-mail from John Hayes to Plaintiff's Counsel, September 25, 2014, Exhibit "C" hereto).

[3] In fact, Ms. O'Connell repeatedly testified that she didn't know how many documents she forwarded to Mr. Queen. (O'Connell Dep. p. 143:16-22, Exhibit "B" hereto).

to the issue of partnership formation, and all of these documents were in any event discoverable by Defendant as early as the commencement of this litigation in December, 2011. In fact, and as discussed in greater detail below, the subpoenaed documents reveal that, despite having an obligation to preserve information, both Defendant's co-counsel Jeffrey Landa and the Defendant either destroyed or failed to produce documents that were in their exclusive possession, and which they describe as "smoking gun" documents.

## ARGUMENT

### THE COURT SHOULD IMPOSE SANCTIONS AGAINST DEFENDANT AND HIS COUNSEL IN CONNECTION WITH THE FILING OF THIS MOTION

It is axiomatic that a federal court has the inherent power to "punish litigation misconduct" and abuses of the judicial process by imposing contempt sanctions, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including dismissals and default judgments.  *See, Shepherd v. American Broadcasting Company, Inc.,* 62 F.3d 1469, 1472, 314 U.S. App. D.C. 137 (D.C. Cir. 1995 (vacated on other grounds). More recent decisions in this District hold that a party has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant. . . if it knew the destruction or alteration of those documents would prejudice [the opposing party].  *D'Onofrio v. SFX Sports Grp., Inc.,* 2010 WL 3324964 (D.D.C. 2010), citing *Shepard v. Am. Broad Cos.,* 62 F.3d 1469, 1481 (D.C. Cir. 1995) (in turn citing *Akiona v. United States,* 939 F.2d 158, 198 (9th Cir. 1991)). Once litigation has commenced, or once a party "anticipates litigation," a party is under obligation to preserve potentially relevant evidence.  *Smith v. Café Asia,* 246 F.R.D. 19, 21, n.1 (D.D.C. 2007). *See also, Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.), *Gerlich v. Dept. of*

*Justice,* 711 F.3d 161, 170 (D.C. Cir. 2013) (*citing Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998). Once a party has notice that "the evidence is relevant to the litigation" or "when a party should have known that the evidence may be relevant to future litigation," it is under a duty to preserve the relevant documents.

In the instant case, both Defendant and his counsel Jeffrey Landa had a reasonable anticipation of litigation, both had a corresponding duty to preserve documents and e-mails relevant to the instant matter, and both intentionally breached that duty with a culpable state of mind. While Plaintiff has produced relevant documents and e-mails (numbering nearly 1,200) in his possession, Defendant testified that he deleted all of his e-mails and produced no documents at his first deposition in November 2011. (Ed Schultz Deposition dated November 10, 2011, pp. 9:20-11:3, "Schultz 2011 Deposition, Exhibit "A" hereto).[4]

Defendant Schultz testified at his 2011 deposition that even though he admitted to sending and receiving e-mails to Mr. Queen and others regarding aspects of the instant litigation, he deleted or was unaware of the location of all of his e-mails (including even those critically relevant and prejudicial e-mails inquired into by the Court of Appeals during oral argument). (Schultz 2011 Deposition, p. 10:2-11, pp. 10:16-11:3, Exhibit "A" hereto). It is undisputed that Mr. Landa and Mr. Queen had numerous disagreements over partnership issues, which clearly put both the Defendant and Mr. Landa on notice that they had a reasonable anticipation of litigation and a concomitant obligation to preserve their relevant documents and electronically stored information ("ESI"). Defendant Schultz's (and his counsel Jeffrey Landa's) notice of reasonably anticipated litigation in connection with the partnership issues between Plaintiff and Defendant is clearly

---

[4]  At his July 2014 deposition, Mr. Schultz produced only redacted versions of his financial documents but no communications, letters, or e-mails.

evidenced by a May 28, 2008 e-mail from Defendant Schultz to Plaintiff. (Schultz e-mail Dated May 28, 2008 "May 28, 2008 Schultz e-mail," Exhibit "I" hereto). In that e-mail, Mr. Schultz tells Mr. Queen that "Jeff [Landa] is busting his balls" about Plaintiff's partner percentage, asks Plaintiff to "…leave all that legal stuff at the waters [sic] edge," and then states that "[Defendant Schultz] won't screw [Plaintiff Queen] or work with anyone else." (May 28, 2008 Schultz e-mail, Exhibit "I" hereto). Both Defendant Schultz and his counsel Jeffrey Landa had notice of a second reasonable anticipation of litigation, as well as a corresponding duty to preserve relevant e-mails and other documents a few days later. (See June 6, 2008 Embedded e-mail from Jeffrey Landa to Plaintiff, Queen, Exhibit "E" hereto). In that e-mail, Mr. Landa expresses "disappointment" that Plaintiff "chose to leave [Landa] out of [Plaintiff's] 'negotiations' with [Defendant Schultz]."

Plaintiff has been prejudiced by Defendant's deletion of *all* his e-mails and the destruction of virtually all documents related to the instant case. Although at his deposition Mr. Schultz exhibited selective memory of which e-mails he received from plaintiff Queen, he was quite clear about certain e-mails Defendant sent to Plaintiff. (Compare July 18, 2014 Deposition of Ed Schultz, "2014 Schultz Deposition" Exhibit "D" hereto, p. 12:5-12:8, with p.30:2-30-24). Plaintiff expects that an authentication dispute over these e-mails (in particular, those e-mails that are both relevant *and* prejudicial to Defendant) will undoubtedly ensue.

Despite his clear and unequivocal duty to preserve e-mails and other documents in reasonable anticipation of litigation with Plaintiff Queen, Defendant Schultz admitted to deleting all of his e-mails. (Ed Schultz 2011 Deposition pp. 10:16-11:9, Exhibit "A" hereto). While Plaintiff has preserved and produced relevant documents responsive to Defendant's requests in this litigation, Defendant Schultz has produced no e-mail, no receipts, and no documents or records other than redacted tax returns and some contractual documents relevant to this litigation. While

Plaintiff has preserved evidence that is both relevant and prejudicial to Defendant, he can now never ascertain what other documents both relevant and prejudicial (to Defendant) have been deleted by Defendant, his counsel Jeffrey Landa, and that are unobtainable from any other source.

Defendant's instant motion for sanctions constitutes a thinly veiled attempt to deflect the Court's attention away from Mr. Schultz and his counsel's abuse of the litigation process, in itself constitutes sanctionable behavior, and should be denied.

It is also important to point out Defendant's dilatory attitude toward initial discovery in this matter. Defendant has had actual knowledge of the existence of potentially relevant evidence in NBC's custody control or possession since the onset of this litigation. In his initial disclosures, Defendant Schultz lists 137 documents that his attorney Jeffrey Landa and NBC held in their possession.[5] (See, Defendant Schultz's Rule 26 Initial Disclosures, Exhibit "F" hereto).[6] In addition to listing 137 documents that his attorney Jeffrey Landa *and NBC* held in their possession, Defendant listed the name of seven (7) officers and employees of NBC/MSNBC and NBC Universal with knowledge of the instant case, and referenced phone and e-mail records associated with these individuals. (See Plaintiff's Rule 26 Initial Disclosures and Defendant's Rule 26 Initial Disclosures, Exhibits "G" and "F" respectively hereto)  At that time, and during the initial litigation of the case, Defendant made no effort to depose or subpoena records from the non-party witnesses at NBC/MSNBC and NBC Universal.  It is disingenuous for Defendant to now maintain that he was not aware of information pertinent to the case that was in the possession of NBC and fully

---

[5] Defendant Schultz' actual document production consisted of one hundred thirty seven (137) bates stamped documents, most of which were copies of the documents previously produced by Plaintiff.

[6] In stark contrast to Defendant Schultz's initial disclosure production, Plaintiff's Rule 26 initial disclosures provided Defendant with "more than 1100 pages of e-mails and other documents exchanged between the parties, including but not limited to Defendant's counsel Jeffrey Landa. (See Plaintiff's Rule 26 Initial Disclosure Notice, "Plaintiff's Initial Disclosures" Exhibit "G" hereto)

discoverable.  Any "smoking gun" surely would have been produced, at least in part, had the Defendant taken the time to engage in even routine discovery.

**Defendant's "Smoking Gun" is a "Smoke and Mirrors" Attempt**
**to Deflect the Court's Attention from Defendant's Spoliation**

The document or documents referred to by the Defendant as the "smoking gun" is a document package that was produced to Plaintiff (and Defendant) in response to subpoenas served on NBC during the re-opened discovery period. (See Submission Return and Letter from NBC to Jeffrey Landa dated October 16, 2008, "NBC Submission Return Letter" Exhibit "H", hereto). Only the letter portion, consisting of the NBC Submission Return Letter, was produced by NBC in response to Plaintiff's subpoena *duces tecum*. It is uncontested that the complete NBC Submission Return Letter package (*i.e.*, the return of the submission materials, together with the submission rejection letter from NBC that was addressed, sent to and received by *Defendant's counsel*, Jeffrey Landa, at his address in Fargo, North Dakota) was, in fact, received by Landa.[7]

Mr. Landa first testified at his September 5, 2014 deposition that he "didn't recall getting" the NBC Submission Return Letter, having only first seen that document "in litigation". (See Jeffrey Landa September 2014 Deposition, p. 6:11-16, Exhibit "J" hereto). Immediately thereafter, Mr. Landa provides dissembling testimony to the effect that: he recalled receiving the document "eventually," then denied that he said that he "received" the document, then concluding that he "knew" that the NBC letter was sent to his address in Fargo, North Dakota.  (See Landa September 2014 Dep. pp. 6:17-7:11, Exhibit "J" hereto.)

---

[7] The NBC Letter Dated October 10, 2008 consisted of a rejection letter addressed to Mr. Landa at his Fargo North Dakota address together with materials submitted by Mr. Landa in what NBC described as his "recent" submission. Mr. Landa has failed to preserve or produce the predicate communication, the submission materials sent to NBC accompanying that predicate communication.

In his September 2014 deposition, Mr. Landa testified that he failed to preserve or make copies of the NBC Return Submission package  (what Defendant argues are "smoking gun" documents) because he (Landa) "never saw it." (Landa September 2014 Dep. p. 13:8-13:10, Exhibit "J" hereto). This testimony extends beyond the disingenuous into a clear and intentional misrepresentation to the Court. First, if Mr. Landa's testimony is to be believed, Landa has no personal knowledge about the receipt of a package undeniably mailed to him by NBC. Mr. Landa also could not have had personal knowledge as to its contents. Instead, incredibly, and despite his reasonable anticipation of litigation discussed above, Mr. Landa decided not to copy these materials prior to his self-serving statement that he asked someone in Fargo, North Dakota by telephone to send something to Mr. Queen. (Landa September 2014 Dep. pp. 9:2-11:2, Exhibit "J" hereto).

Other than Defendant's counsel's self-serving testimony, which consists of Mr. Landa's recounting a telephone conversation with some unknown person about a package Mr. Landa claims to have never seen or opened, there is no proof that Plaintiff received (or even was sent) any kind of package or mail from Mr. Landa, as Mr. Landa has also not produced a mailing receipt to prove his claims.

Neither the NBC Submission Return Letter, nor the submission materials that accompanied it, were disclosed by Defendant or Mr. Landa in Defendant's July 2011 Rule 26 Initial Disclosures or at any time thereafter, although all such documents and ESI were clearly requested by Plaintiff in his discovery requests. Simply put, it was Defendant's and Mr. Landa's obligation – and not Plaintiff's obligation – to produce both the earlier submission to NBC sent by Mr. Landa and the complete return of the submission that was sent by NBC to Mr. Landa.

More troubling, however, is the failure by Defendant and Mr. Landa to produce the earlier submission (and any accompanying communication) from Mr. Landa to NBC that clearly precipitated the return of the NBC Submission Return Letter package to Mr. Landa. The *complete* NBC Submission Return package that was sent by NBC to Defendant's counsel Jeffrey Landa, together with the earlier submission (and any associated communication) by Mr. Landa to NBC is clearly relevant. The intentional withholding and/or destruction resulting in the absence of this evidence prevents Plaintiff from proving directly that these materials would have been favorable to him. It is well established in this District that "when…a party had a duty to preserve evidence, that evidence was destroyed, and the destruction was accompanied by a sufficiently culpable state of mind, an adverse inference is warranted if the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoilated evidence, to the extent that a reasonable fact finder could conclude that the lost evidence would have supported the claims or defense of the party that sought it. Beck v. Test Masters Educ. Servs., Inc., 289 F.R.D. 374, 379 (D.D.C. 2013) appeal dismissed, 2013 WL 4711721 (D.C. Cir. 2013) and reconsideration denied, 2013 WL 6668651 (D.D.C.) (Internal citations omitted). Defendant and his counsel had an obligation to preserve such evidence, breached that obligation, and certainly possessed a culpable state of mind sufficient for the Court to make a finding of spoliation by them.

Defendant's assertions that he suffered prejudice as a result of Plaintiff's alleged non-production of documents held in the possession of NBC (and returned to Defendant's counsel), are also undermined by Defendant's own Rule 26 Initial Disclosures, which clearly indicated the Defendant was fully informed that NBC possessed information related to the case.  *See and compare, Shea v. Donohoe Const. Co.,* 795 F.2d 1071 (D.C. Cir. 1986).  Even so, Defendant has failed to produce alleged "smoking gun" documents that were sent to his counsel Jeffrey Landa.

Defendant admits that the alleged "smoking gun" documents were sent to him by NBC several years ago. *See, Def.'s motion for sanctions at p. 4, footnote 5.* It is evident from the Defendant's motion that it is nothing more than misleading and deceptive boilerplate intended to harass the plaintiff and delay the proceedings in this litigation.

The Defendant and Mr. Landa thus misrepresent the NBC documents as "smoking gun" documents because they seek to have the Court (1) construe evidence which they have withheld or destroyed as prejudicial to Plaintiff Queen, and (2) construe the evidence as prejudicial to Plaintiff, although only Defendant and Mr. Landa could know the substance and content of the document package sent to Mr. Landa. To the contrary, as of the filing of the instant Opposition, neither Defendant nor Mr. Landa have produced either the NBC Submission Return Letter or the accompanying submission material, which was in their sole possession. Nor have Defendant or Mr. Landa produced the earlier submission from Mr. Landa to NBC that clearly predicated the NBC Submission Return Letter and its accompanying material, evidence which also was under their exclusive possession. The earlier submission from Mr. Landa to NBC, as well as the materials accompanying the NBC Submission Return Letter are clearly both relevant and, in light of the Defendant Schultz' admitted mass deletion of relevant documents, amply support a finding of discovery abuse and spoliation by Defendant and/or his counsel Jeffrey Landa.

Every other document contained in the Defendant's meritless motion has been produced. Most are irrelevant to the issue of partnership but are clearly within the possession of the Defendant. Defendant states somewhat cryptically that his motion is not a discovery motion, and he implies that he is seeking "smoking gun" documents that only Plaintiff can produce. Plaintiff has testified previously that he never received any documents from Jeffrey Landa, including the "smoking gun" documents that were last in the sole and exclusive possession of Mr. Landa. Based

upon these facts, sanctions should be imposed against the Defendant and his counsel for *their* non-production of the alleged "smoking gun" documents.

Defendant falsely and maliciously states that between 2008 and 2011 up to 1000 documents on "everything involving Schultz" were deleted from non-party witness Susan O'Connell's computer after sending them to Queen. Defendant also falsely alleges that Queen did not disclose the deletion or his failure to produce documents.

It is undisputed that Plaintiff Queen submitted 1,183 documents to the Defendant in response to Defendant's discovery request. Contained in these documents were approximately 116 e-mail messages and documents that were sent to Plaintiff from non-party Susan O'Connell and approximately the same number of documents that were sent from Plaintiff to Ms. O'Connell. The total number of documents that were produced relating to Plaintiff and Susan O'Connell totaled approximately 232 documents. Defendant asserts in his motion that Plaintiff somehow failed to produce (and that non-party Susan O'Connell somehow failed to preserve) "over 1000 documents" involving Plaintiff and Defendant.

Contrary to those assertions, Ms. O'Connell *never* testified that she "gave" Plaintiff "over 1000 documents;" Ms. O'Connell also *never* testified that she "deleted" those 1000 documents. (See O'Connell Dep. pp. 143:16-22, Exhibit "B" hereto). Ms. O'Connell did testify that from "2008 on everything to do involving anything with Ed Schultz was forwarded to Michael Queen and his computer." (O'Connell Dep. p. 147:1-3) Defendant's allegations are pure fabrication, and intended to deliberately misrepresent Ms. O'Connell's testimony to the Court.

What the record *does* show is that it was Defendant's counsel Jeffery Landa who suggested that Ms. O'Connell gave 1000 documents to Plaintiff. In fact, the *only* statement in Ms. O'Connell's deposition concerning "1000" documents was made by Mr. Landa in a question to

Ms. O'Connell. (O'Connell Dep. p.143:19-21, Exhibit "B" hereto).  Ms. O'Connell (who is a non-party to this action) never testified that she deleted or destroyed 1000 documents. Ms. O'Connell testified directly and clearly that she gave all of her documents to Plaintiff Queen, and further testified that she did not know how many documents were sent (O'Connell Dep. pp. 143:7-10, 143:16-22, Exhibit "B" hereto). The number "1000" was a proffered suggestion by the Defendant's counsel Jeffrey Landa (O'Connell Dep. p.143:19-21, Exhibit "B" hereto). In fact, 1,183 documents were produced and given to the Defendant by Plaintiff, and listed the documents with Bates numbers 1 – 1,183.  Plaintiff has attached an index of the produced documents as evidence of his compliance with the discovery rules. (See Plaintiff's Document Production Index, Exhibit "K" hereto).

Ms. O'Connell's exact testimony relating to the "1000" document question appears below:


Q. Okay.  I think you testified yesterday that all of the documents that were responsive
     to the Subpoena Duces Tecum was given to Mr. Queen, correct?
Q.  Yes.
Q. Okay.  And did you create hard copies to give him?
A.  No.
Q.  Okay.
A.  I don't know.
Q.  Okay.  Do you recall approximately how many documents you gave him?
A.  I don't recall the exact number.
Q. You don't need to know the exact number.  I just want to know, can you estimate
     how many?  Was it 1000?
A.  I – I - I don't know.
Q. Okay.  Did you give him any hard copies of E-mails or documents that were
responsive to the Subpoena?
 A. No. I mean – no. No.
Q. Okay.  So you only gave him documents that were created on your computer and you
 E-mailed them to him?
A.  That – I believe so. yes.
                            O'Connell Depo. pp. 143:16-144:8 (Exhibit "B" hereto).

Equally disturbing was the fact that Mr. Landa harassed and abused witness Susan O'Connell during her deposition by repeatedly asking her the same questions that she had previously answered. This occurred on at least ten occasions.  In at least one instance, the questioning went as follows:

> Q.  So my understanding of your testimony just now was that you were there and
> Saw him refuse to sign an agreement; is that correct?
> A.  No, that is a – an incorrect characterization.
> Q.  Okay. Well, explain it to me, please.
> A.  E-mails were going back and forth and it was - - I told Michael that I believe
> that Ed was not going to sign any agreement between Michael Queen and Ed
> Schultz.  It was my opinion.  I wasn't a lawyer representing him.  It was just my opinion.
> Q.  Okay.  And - - but you testified, I think - - and tell me if I'm wrong, but didn't
> you testify that your personal experience - - I asked you if you had personal
> experience where you saw Mr. Schultz refuse to sign an agreement and you - - is
> that not true, you didn't see that?
> A.  Okay.  Please don't put words in my mouth.
> Q.  I'm asking you to put them in your mouth.
> A.  Okay.
> Q. That's what I understood you to say.
> A. Then as far as I know - -
> Q. Wait until I'm done, please.  That's what I understood you to say.
> A. Okay.
>
> O'Connell Depo. –pp. 161:9-162:12, Exhibit "B", hereto

Mr. Landa repeatedly badgered Susan O'Connell in an attempt to confuse her, and further in an obvious attempt to place words in her mouth such as "Was it 1,000?" (Landa's reference to documents that he falsely alleges she deleted). It is undisputed that Plaintiff produced 1,183 documents that contained e-mails and letters forwarded to him by Susan O'Connell. Defendant and his counsel's conduct should be sanctioned, for the intentional misrepresentations that Ms. O'Connell deleted "1000" documents and that Plaintiff failed to produce those "1000" documents.

**Plaintiff has disclosed all documents within his possession and maintains that there are no "smoking gun documents" that contradict his sworn deposition testimony addressing key issues in this litigation.**

Plaintiff disclosed each and every relevant document in his possession. They included approximately 1,183 pieces of correspondence and advertising brochures.  In stark contrast to Plaintiff's production, Defendant Ed Shultz testified that he deleted each and every relevant e-mail that he sent to (or received from) Plaintiff, or from any non-party in connection with this litigation. It is defendant Schultz who has breached his duty to preserve electronically stored information generally, and in particular all of his e-mail communications.  In attempting to deflect the Court's attention away from his discovery abuse, Defendant Schultz, and his counsel have resorted to asserting a series of false and misleading misrepresentations to the Court.  The record plainly shows that Defendant has engaged in deceptive conduct from the very beginning of the litigation.

Mr. Schultz testified to the following at his deposition on November 10, 2011:

> **Q. Did you bring any documents with you in response to the deposition notice and the subpoena duces tecum.**
>
> A.  No.
>
> **Q.  Do you have any e-mails records of any exchange which is in any way related to any of the issues in this case?**
>
> A.  No.
>
> **Q.  Have you received and sent a number of e-mails to Mr. Queen and and others regarding aspects of this case?**
>
> A.  Yes.
>
> **Q.  Where are they now, do you know?**
>
> A.  I don't know.

**Q.  Have you received any receipts or payment vouchers regarding anything related to this case?**

A.  No.

**Q.  Is it your testimony that you didn't keep any of the e-mail Correspondence in this case?**

A.  I get –

**Q.  I beg your pardon.**

A. I get hundreds of e-mails because of my radio show.  They all get deleted.  I have not researched any of them.  They're all deleted.  I delete all my e-mails about once a week.

**Q. I'm not talking about e-mails from fans or listeners to your show, but e-mails which you answered and wrote back to Mr. Queen about or copied Mr. Landa and others.  They're all deleted also?**

A.  To the best of my knowledge, yes.

Ed Schultz 2011 Dep., pp. 9:20-11:14, Exhibit B hereto

**Plaintiff's Rule 26(a)(1) Initial Disclosures listed Seven (7) NBC/NBC Universal Officers and Employees with identifying information and notice of e-mail records held by NBC.**

In his initial disclosures, Plaintiff listed seven (7) NBC officers and employees, who possessed discoverable information related to the instant case.  The officers/employees were 1) Ric Cornish – Station Production Manager, NBC Washington; 2) Phil Griffin – President, MSNBC; 3) James Holm – Producer – *The Ed Schultz Radio Show*; Producer, *The Ed Show*; 4) Michael Jack – General Manager, NBC 4, Washington (currently President and General Manager, NBC; 5) Katie Hockmeyer – Jeff Zucker's (CEO, NBC Universal) Assistant; 6) Jimmy Fox – Ben Silverman's (NBC Director of Creative & Media Strategy) Assistant,; and Steve Capus –

President, NBC News.  Defendant Schultz cannot maintain that he was unaware of documents and information in NBC's possession. Defendant instead chose not to subpoena the documents from non-party witness NBC until the reopening of discovery in 2014.  Plaintiff likewise did not subpoena documents from NBC Universal, because, to the best of his knowledge, they were largely documents exchanged between his legal counsel and NBC related to efforts to settle the case and which were not relevant to the issues currently disputed in this matter.

### Defendant's Rule 26(a)(1) Initial Disclosures reveal Defendant was fully aware NBC possessed documents related to the case and defendant took no action to subpoena the documents, but instead falsely alleged they were being improperly withheld.

Plaintiff respectfully submits that Defendant has filed this motion in bad-faith.  Plaintiff makes this representation in good faith based upon the Initial Disclosures listed in Defendant's July 22, 2011 filing. Most of the disclosures are the very documents that the Defendant contends were not made available to him. These include Defendant's document ES00112-141 (JBL-Sternlicht e-mail string and attachment); ES00143-147 (Lane-Landa-Sternlicht e-mail string); ES00190-192 (Lutzker e-mail to Sternlicht); ESOO188-189 (Queen Press Release; etc.) (Defendant's Rule 26(a)(1) Initial Disclosures, Exhibit "F" hereto).

Defendant's claims that he was taken by surprise and not aware of NBC's possession of documents is a gross distortion of the truth. The only item about which both parties were unaware was the NBC/NBC Universal submission log (NBC Submission Log, Exhibit "L" hereto) which NBC produced and was given simultaneously to both parties pursuant to the subpoenas issued by them.

### Defendant has failed to produce the documents that were sent to Jeffrey Landa by NBC and which remain in the possession of Mr. Landa.

Not only was Jeffrey Landa in possession of Defendant's alleged "smoking-gun documents at all times pertinent hereto, Mr. Landa was the *only* person in possession of those documents, which

he did not produce when requested to do so in response to Plaintiff's request for production of documents.  To sum it up, there are no "smoking-gun" documents that have not been produced by Plaintiff.  To the contrary, these "smoking gun documents" were in the custody, control, and possession of Defendant and/or his counsel, and they had the obligation to both preserve and produce these documents to Plaintiff in this matter. This they have not done. Defendant's motion consists of a thinly disguised "smoke and mirrors" attempt to deflect the fact of discovery abuse by both Defendant and his counsel and constitutes sanctionable conduct.

## CONCLUSION

Plaintiff produced approximately 1,183 documents during discovery.  Defendant produced approximately 137 documents, many of which are e-mail thread duplicates and incomplete. In addition, Defendant Schultz testified that he deleted all of his e-mails relevant to this matter, even though he clearly had a duty to preserve them as early as May 28, 2008.  None of these were preserved or produced by Defendant or his counsel Jeffrey Landa. Defendant's counsel Jeffrey Landa failed to preserve the one group of documents sent to him by NBC that he maintains are the "smoking gun" documents.  Moreover, Mr. Landa failed to produce the predicate submission communication he sent to NBC that resulted in the return of that submission to Mr. Landa at his Fargo, North Dakota office. Defendant also has misrepresented the testimony of non-party witness Susan O'Connell to both Plaintiff and the Court. Defendant's motion is intended to harass Plaintiff and delay the trial of this matter. However, in filing the motion the defendant has exposed his (and his counsel's) misconduct that warrants the imposition of sanctions against him and an award of attorneys' fees in Plaintiff's favor.

WHEREFORE, Plaintiff respectfully moves the court to deny defendant's motion in its entirety, and award Plaintiff attorneys' fees and appropriate sanctions against the defendant, including the issuance of a default judgment or the exclusion of evidence at trial.

Respectfully submitted,

ABBOTT LAW GROUP, P.A.

_____/s/_____

F. CATFISH ABBOTT
FL. BAR NO:  265292
STEVEN W. TEPPLER
DC BAR NO:  445259
*Co-Counsel for Plaintiff*
2929 Plummer Cove Road
Jacksonville, FL 32223
T:  904-292-1111
F:  904-292-1220
E-mail:  steppler@abbottlawpa.com
E-mail:  shartman@abbottlawpa.com

_____/s/_____

FRAZER WALTON, JR.
Member of the Bar of District of
Columbia #374301
920 Burns Street, SE
Washington, DC 20019
Office:  202-584-7572
E-mail:  frawalton@verizon.net
*Co-counsel for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2014, I caused a true and correct copy of the foregoing plaintiff's opposition to defendant's motion for sanctions, and accompanying documents to John Hayes, and by first class mail, postage prepaid, addressed to:

John C. Hayes, Jr.
Nixon, Peabody, LLP
401 9th Street, NW, Suite 900
Washington, DC 20001

Jeffrey B. Landa
The Law Offices of Jeffrey B. Landa
1202 S. 24th Avenue
Fargo, ND 58103


_____
Steven Teppler